UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 07-10774 |
| | ) | |
| ALEXANDER GREENSPAN and | ) | Chapter 7 |
| FRIDA GREENSPAN, | ) | |
| | ) | Judge Pat E. Morgenstern-Clarren |
| Debtors. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |

Chapter 7 debtors Alexander and Frida Greenspan received a bankruptcy discharge in 2007.  They allege that creditor-attorney George Badovick violated that injunction by filing two state court lawsuits against them seeking to collect a discharged debt, and ask that he be held in contempt.  Mr. Badovick denies that he violated the injunction.  For the reasons stated below, the court finds that Mr. Badovick violated the discharge injunction and awards damages against him.

## JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered by the United States District Court for the Northern District of Ohio.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## RELEVANT PROCEDURAL HISTORY

The debtors moved to reopen their case to address the dispute with attorney Badovick.  Mr. Badovick opposed the motion *pro se*, stating in part that he was not trying to collect a money judgment against the debtors, that they were necessary parties to his lawsuits, and that a "filing and discharge in the bankruptcy court does not insulate the Greenspans for any and all civil

claims which may be brought against them."[1] The court granted the motion to reopen and the debtors removed the state court lawsuit to this court. The debtors then filed a motion on Mr. Badovick to appear and show cause why he should not be found in contempt for violation of the discharge order and for sanctions under bankruptcy rule 9011. The court granted the motion and set the matter for an evidentiary hearing.

## FACTS AND DISCUSSION

The findings of fact reflect the court's weighing of the evidence presented, including determining the credibility of the witnesses. "In doing so, the Court considered the witness's demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language or nuance of expression." *In re V Companies*, 274 B.R. 721, 726 (Bankr. N.D. Ohio 2002). *See* FED. R. BANKR. P. 7052 (incorporating FED. R. CIV. P. 52). When the court finds that a witness's explanation was satisfactory or unsatisfactory, it is using this definition:

> The word satisfactory 'may mean reasonable, or it may mean that the Court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation–he believes what the [witness] says with reference to the [issue at hand]. He is satisfied. He no longer wonders. He is contented.'

*United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 659 (Bankr. N.D. Ohio 1990) (discussing the issue in context of bankruptcy code § 727) (quoting *First Texas Savings Assoc., Inc. v. Reed*, 700 F.2d 986, 993 (5th Cir. 1983)).

---

[1] Docket 103.

### The Badovick Debt

Pre-petition, attorney George Badovick sued his former clients Alexander Greenspan and AG Automation, Inc. in Chardon Municipal Court to collect legal fees incurred in connection with commercial litigation. Mr. Greenspan felt that he had not hired Mr. Badovick individually and he was not happy with the results of the earlier litigation. Attorney Badovick was represented by attorney P. Ryan Parker in the collection lawsuit.[2] On August 30, 2006, a magistrate issued a decision recommending that judgment be entered against the defendants for $5,686.84 plus interest and costs.

When Alexander and Frida Greenspan filed their bankruptcy case on February 8, 2007, they listed attorney Badovick as an unsecured creditor. Attorney Badovick filed a proof of claim reflecting this debt. Ultimately, Mr. Badovick received a pro rata distribution from the bankruptcy estate.

At the hearing held in this case, it was evident that hard feelings remained between attorney Badovick and Mr. Greenspan concerning the commercial litigation and the collection lawsuit.

### The Chapter 7 Trustee's Issue regarding Property on Liberty Road, Solon, Ohio

The debtors filed their case under chapter 13 of the bankruptcy code and then converted it to chapter 7. The chapter 7 trustee questioned a prepetition real estate transaction that the debtors entered into with their long-time friend, Dr. Igor Lantsberg. Although the trustee did not file a formal adversary proceeding, he negotiated with the debtors to resolve the issue and reached an agreement. The trustee then filed a motion for authority to compromise controversy.

---

[2] Debtors' exh. A, attachment.

In that motion, he alleged these facts: About seven months before the debtors filed their bankruptcy case, they sold their residence on Trapper's Trail, Russell, Ohio and received net proceeds of $455,714.55. They wanted to purchase a house on Liberty Road, Solon, Ohio but could not obtain financing due to their financial difficulties. Mr. Greenspan asked a close friend, Dr. Igor Lantsberg, to help, and he agreed to do so. They structured the transaction so that Frida Greenspan provided the $120,000.00 down payment to Igor and Ludmilla Lantsberg, using proceeds from the Russell house to do so. The Lantsbergs took title to the Liberty Road property and signed the note and mortgage. The Greenspans moved into the house, and paid the monthly note payments and expenses associated with the house. At some point, the trustee alleged, the Lantsbergs transferred the property to FGAG Limited, LLC, an Ohio limited liability company in which Dr. Lantsberg owns a 95% interest and Mr. Greenspan owns 5%.

The trustee asserted in his motion that the $120,000.00 transfer to the Lantsbergs was a fraudulent transfer under Ohio Revised Code chapter 1336 and proposed to settle his claim against the Lantsbergs by the debtors paying $80,000.00 to the estate.[3] The trustee did not raise any concerns about the debtors' disposition of the remaining proceeds that the debtors received from the sale of the Trapper's Trail house. Attorney Badovick was served with the trustee's motion to compromise. He did not object to it or request a hearing.

On September 28, 2007, the court entered an order granting the trustee's motion and finding specifically that:

> . . . the trustee is authorized to accept the sum of $80,000.00 from
> the debtors in full settlement of any and all claims of any nature
> which the trustee has or may have against Igor & Ludmilla

---

[3] Debtors' exh. B.

> Lantsberg arising out of the transactions more fully described in the
> trustee's motion and the payment of the settlement authorized
> hereby shall constitute a full release of Igor & Ludmilla Lantsberg,
> their respective heirs, affiliates, agents, successors, and assigns,
> with respect to such claims.[4]

Attorney Badovick was not served with the September 28, 2007 order and he never reviewed the bankruptcy court docket to see how the motion to compromise was resolved. He was, however, served with the October 15, 2007 order granting the debtors a discharge and providing information about the discharge injunction.[5]

## 11 U.S.C. § 524

Debtors who meet all of their obligations under the bankruptcy code are entitled to a discharge of most debts. The discharge "operates as an injunction against the commencement . . . of an action, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.]" 11 U. S. C. § 524(a)(2). The discharge is a court order and a creditor who violates the order is subject to contempt proceedings. *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 421 (6th Cir. 2000).

The party alleging contempt must show by clear and convincing evidence that the alleged contemnor violated a definite and specific court order which required the performance or the nonperformance of an act with knowledge of the court order. *In re Walker,* 257 B.R. 493, 497 (Bankr. N.D. Ohio 2001) (quoting *Rolex Watch U.S.A. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). "Willfulness is not an element of civil contempt and intent to disobey the order is irrelevant." *Id.* In the context of a discharge injunction violation, a debtor must prove that the

---

[4] Debtors' exh. D.

[5] Debtors' exh. E.

07-10774-pmc    Doc 126    FILED 02/22/10    ENTERED 02/22/10 14:57:32    Page 5 of 14

alleged contemnor "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002). "If contempt is established, the injured party may be able to recover damages as a sanction for the contempt." *In re Caravona*, 347 B.R. 259, 267 (Bankr. N.D. Ohio 2006).

"[A] distinction must be made between acts which have as their direct and natural purpose the collection of debts and acts which have some other lawful purpose but could also be used (or, more accurately, misused) to coerce payment of a debt." *In re Jones*, 367 B.R. 564, 569 (Bankr. E.D. Va. 2007). A facially permissible lawsuit may violate § 524(a)(2) under certain circumstances:

> Notwithstanding the facial permissibility of a lawsuit or some other action taken by a creditor vis a vis a discharged debtor, a violation of § 524(a)(2) may still be found if the debtor proves "the creditor acted in a such a way as to 'coerce' or 'harass' the debtor improperly," i.e., so as to obtain payment of discharged debt.

*Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1308 (10th Cir. 2008) (quoting *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006)); *see also In re Evans*, 289 B.R. 813, 826 (Bankr. E.D. Va. 2002) (stating that a bank's ability to sue the debtor for the return of its leased vehicle at the end of the lease did not permit the bank to "cloak its efforts to recover on the discharged debt in the false rubric of seeking the recovery of its leased car."). "The inquiry is objective; the question is whether the creditor's conduct had the practical effect of coercing payment of a discharged debt, and bad faith is not required." *In re Paul*, 534 F.3d at 1308. A debtor may, therefore, show that a creditor's action violates the discharge injunction where the action is not an overt violation "but to do so the debtor must 'prove not merely that [the creditor's] act is not what it appears to be, but that the act in question is one to collect a

6

discharged debt *in personam.*'" *Id.* (quoting *In re Schlichtman*, 375 B.R. 41, 97 (Bankr. D. Mass. 2007)).

**<u>The First Complaint Filed After the Discharge</u>**

On May 4, 2009, Mr. Badovick–again represented by attorney P. Ryan Parker–filed a "Complaint for Money" in the Cuyahoga County Court of Common Pleas in which he named as defendants Alexander Greenspan, Frida Greenspan, FGAC Limited, LLC,[6] and Dr. Lantsberg. Dr. Lantsberg is listed as "Address Unknown." The court finds that attorney Badovick drafted the complaint and that attorney Parker put his name on it as counsel of record and filed it as an accommodation to attorney Badovick. Attorney Badovick "researched it procedurally . . . researched it on the case law, and . . . talked to another attorney who does bankruptcy work" and concluded that he could file the complaint because he "was not trying to collect a debt that had been discharged in bankruptcy."[7]

The complaint states that:

> 1. Defendants Alexander Greenspan, Frida Greenspan (husband and wife) and Igor Lantsberg, are natural persons residing in Cuyahoga County, Ohio. Defendant FGAC Limited, LLC is an Ohio Limited Liability Company formed in July, 2004, having Lantsberg owning 95% and Alexander Greenspan owning 5%.
>
> 2. On or about August 30, 2006, plaintiff was awarded a judgment (Case Number 2005 CVF 1163, Chardon Municipal Court, Geauga County, Ohio) against defendant Alexander Greenspan in an amount of $5,686.84 plus interest at 6% from January 8, 2003.

---

[6] Although the name of this entity differs from the entity referenced in the trustee's motion to compromise, it appears that Mr. Badovick intended to name the same entity.

[7] Badovick Deposition transcript at 36, introduced as debtors' exhibit but not assigned a letter.

7

3. On or about February 20, 2007, plaintiffs Alexander Greenspan and Frida Greenspan filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Ohio, Case Number 07-10774. Plaintiff Badovick was listed as a judgment creditor. Later, on or about April 13, 2007, the case was converted to a Chapter 7.

4. During the course of the action pending in the Bankruptcy Court, court filings indicated a controversy concerning the sale of a house at 14880 Trapper's Trail, Russell, Ohio 44072, the acquisition of the house at 6975 Liberty Road, Solon, Ohio, and the proceeds from the sale of the Trapper's Trail house. The net proceeds from the Trapper's Trail house was $455,714.55.

5. In substance, the Trustee in Bankruptcy asserted that Frida Greenspan transferred $120,000.00 to Lantsberg and such transfer was fraudulent pursuant to the provisions of Chapter 1336, Ohio Revised Code, Ohio Fraudulent Conveyances Act. There was no reference to the remaining $335,714.55.

6. As settlement of the bankruptcy case, plaintiff was paid $834.43 on June 24, 2008.

COUNT I
FRAUDULENT CONVEYANCE

7. Plaintiff incorporates and reallege the allegations set forth in paragraphs 1 through 6 as if fully rewritten herein.

8. Defendants are debtors, insiders or affiliates as defined in Ohio Revised Code §1336.01, Ohio Fraudulent Conveyances Act.

9. At the time the judgment was entered against Alexander Greenspan and prior to the commencement of the bankruptcy proceedings, assets and property that were estate property could have been used to satisfy the judgment against Alexander Greenspan.

10. The sale and transfer and concealment of such property were made with the intent to deceive and defraud the plaintiff as defined ORC § 1336.04 and 1336.05.

11. As a result of said sales, transfers and concealments, plaintiff has been damaged.

## COUNT II
## CIVIL CONSPIRACY

12. Plaintiff incorporates and reallege the allegations set forth in paragraphs 1 through 11 as if fully rewritten herein.

13. Defendants, acting in malicious combination, performed a series of sales, transfers and concealments that injured plaintiff financially.

## COUNT III
## CIVIL RICO CLAIM

14. Plaintiff incorporates and reallege the allegations set forth in paragraphs 1 through 13 as if fully rewritten herein.

15. Ohio Revised Code §2923.34 allows for Civil [sic] proceedings for alleged violations of §2923.32 or for alleged conspiratorial violations of that section.

16. Defendants engaged in a series of transactions that involved the sale, transfer and concealment of property.

17. As a result of the conduct of defendants, plaintiff has been damaged.

In his prayer for relief, attorney Badovick asked for damages in the amount of $4,852.41 plus interest, treble damages, attorney fees, and costs.

At deposition and again at trial, attorney Badovick admitted that the transaction underlying this complaint is the same transaction that was the subject of the trustee's motion in the bankruptcy court. When asked at deposition and at trial what other "transactions" he was referring to in the complaint, attorney Badovick could not identify any.

When Mr. Greenspan received the complaint, he immediately contacted his attorney, Mary Ann Rabin. Ms. Rabin in turn called attorney Parker and wrote to him regarding the attempt to collect a prepetition debt. When he did not respond, Ms. Rabin called Mr. Badovick, again without any immediate response.

9

An odd interaction then took place. Ms. Rabin spoke at a Geauga County Bar Association seminar on June 9, 2009. Unbeknownst to her, attorney Badovick, who practices in that county, was in the audience. During her talk, Ms. Rabin discussed the facts of this case without naming names and held it up as an example of a violation of the discharge injunction. She referred to the attorney who filed the complaint as "young, inexperienced, and stupid." Mr. Badovick took personal offense at this remark, feeling that attorney Rabin had said enough about the case that others in the audience knew she was talking about him.

Finally, on June 19, 2009, the complaint was dismissed. Attorney Badovick testified that he dismissed the complaint because it was "inartfully drafted" and did not make clear that he was not trying to collect on a discharged debt.

Mr. Badovick did not make any attempt to obtain service on Dr. Lantsberg before the complaint was dismissed, saying that he intended to serve an interrogatory on the Greenspans to get the address. Mr. Greenspan did not tell Dr. Lantsberg about the complaint because he was very embarrassed that his friend was again drawn into a court proceeding, and he did not understand how attorney Badovick could be raising the issue again when the Lantsbergs had received a complete release from the bankruptcy trustee. When the complaint was dismissed, both Mr. Greenspan and attorney Rabin felt that the issue was resolved, again.

### The Second Complaint Filed after the Discharge

Undeterred, on August 7, 2009, attorney Badovick filed a second state court complaint, this time representing himself. In the complaint, he again named as defendants Alexander Greenspan, Frida Greenspan, FGAC Limited, LLC, and Dr. Igor Lantsberg. He again listed Dr.

Lantsberg as "address unknown." The allegations are quite similar to those in the first complaint, with these changes: Paragraph 7 states that "Defendants, Alexander Greenspan and Frida Greenspan, are named herein as necessary parties as described in Civil Rule 19. No money judgment is being sought against them." The prayer for relief asks for damages in the amount of $6,000.00, treble damages, attorney fees, and costs, with the statement that "[n]o monetary damages are being sought against defendants Alexander Greenspan and Frida Greenspan."

Attorney Badovick gave several explanations for why he named the debtors in this complaint. At deposition, he testified that after he dismissed his first complaint, he "talked to [bankruptcy] counsel a second time . . . and was coached on the language and filed a complaint."[8] At trial, he testified that he named these four parties because their names appeared in the bankruptcy court papers. He thought there were probably others involved in the civil conspiracy, but he could not determine that until he took depositions and got other evidence in this action. He still could not identify the "transactions" that he referred to in the complaint, other than the $120,000.00 transfer that was the subject of the chapter 7 trustee's motion. He felt that the Greenspans were necessary parties under Ohio Rule of Civil Procedure 19(A) because they had an interest in FGAC, LLC and he had to name them as defendants so that they could protect their interest in that company. He described them as "having a role, being stake holders" in the action. He felt that the case law favors naming members of a limited liability company as parties in these actions and they can always be dismissed later.

---

[8] Badovic deposition transcript at 49.

As to Dr. Lantsberg, attorney Badovick felt that he was one of the alleged conspirators, saying that he "had to have an actual defendant or the case would be dismissed." He did not view this as a problem for any of the named defendants because if they were dismissed, then "no harm, no foul." He did not list an address for Dr. Lantsberg because he did not find one in the phone book and again intended to obtain it through an interrogatory to the Greenspans. At trial, Dr. Lantsberg testified that he has been practicing medicine in this area for more than 35 years, has never been sued for any disputes alleging a failure to pay his debts, and that he was angry when he found out that he had been named as a defendant in these lawsuits.

As to the merits of his complaint, attorney Badovick did not have any detail in it because he said he did not know the parties who could be liable; he would add that later. Having now reviewed the court order granting the trustee's motion to compromise, he still thinks that some of his state court causes of action are not barred by it, because the money from the sale of the Trapper's Trail house "must have gone somewhere."

Badovick was clearly attempting to collect discharged prepetition debt when he filed the first lawsuit. The more difficult issue is this: was attorney Badovick attempting to collect a prepetition debt from the debtors when he filed the second lawsuit? The court finds that he was. The judgment that attorney Badovick obtained against the debtor Alexander Greenspan was discharged in the chapter 7 case. The state court lawsuit was a thinly veiled effort to pressure the debtors into paying that debt. The suit says that Mr. Badovick obtained a judgment against Mr. Greenspan; Mr. and Mrs. Greenspan sold their house and used the proceeds; Mr. Greenspan should have used the proceeds to pay Mr. Badovick; therefore, the debtors, Dr. Lantsberg, and

FGAC Limited, LLC are liable to Mr. Badovick because they conspired through a series of unidentified transactions to not pay him the money he was owed.[9]

The court does not believe attorney Badovick's explanation that he did not intend to collect his discharged debt from the debtors. The court finds that he had a grievance against Alexander Greenspan arising out of the unpaid legal fees and the allegations that he had mishandled the commercial litigation, and that this was exacerbated by the perceived insult in front of his colleagues at the bar association seminar. Mr. Badovick was bound and determined to collect those fees through any pressure he could apply. After he dismissed his first lawsuit, he cast about for some way to name the debtors in a lawsuit, and tried to hide behind a claim that they were necessary parties. He intended to pressure the debtors to pay the discharged debt by naming them as defendants in that lawsuit, forcing them again to retain counsel to represent them, and also by naming their good friend Dr. Lantsberg as a defendant. In doing so, he violated the discharge injunction.

A creditor who violates the discharge injunction is liable to the debtor for damages. The debtors asked that the court award them $10,000.00 and attorney fees. There was no evidence that the debtors suffered actual damages, and so the request to award $10,000.00 is denied. To the extent that the $10,000.00 was a request for punitive damages, the request is also denied.

---

[9] The debtors seemed to argue that the lawsuit against Dr. Lantsberg also violated the discharge injunction. Dr. Lantsberg was not a debtor and did not receive a discharge; therefore, the action against him could not have violated § 524. There is a question as to whether Mr. Badovich violated Ohio Rule of Civil Procedure 11 when he sued Dr. Lantsberg, given that both Dr. and Mrs. Lantsberg had been completely released from liability relating to the Trapper Trail's transfer under the court order granting the trustee's motion to compromise. As the issue at the hearing was whether Mr. Badovik should be held in civil contempt for violation of the discharge injunction, the court will not reach the issues regarding Dr. Lantsberg.

13

The court finds that the violation of the discharge injunction is adequately addressed by awarding the debtors their actual attorney fees. Attorney Rabin represented that the debtors had incurred $13,000.00 in fees in connection with this dispute, not including the time spent at the hearing. She is to file a detailed fee statement on or before **March 1, 2010**. If Mr. Badovick objects to any of those fees, he is to file his objection on or before **March 15, 2010**. The court will then decide the amount of the attorney fee award based on those filings.

    IT IS SO ORDERED.

_____
Pat E. Morgenstern-Clarren
United States Bankruptcy Judge